IN RE ROMANCE M.*
(10511)

IN RE JASON M. ET AL.
(10568)

DUPONT, C. J., LAVERY and FREEDMAN, JS.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued October 1, 1992—decision released April 6, 1993

*Benjamin Zivyon,* assistant attorney general, with whom were *Dennis Antonacci,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney

general, and *Susan T. Pearlman* and *Diane W. Whitney,* assistant attorneys general, for the appellant-appellee (petitioner).

*Kathleen M. Harkins,* with whom was *Ronald Sobieraj,* for the appellee-appellant (respondent).

*Barbara J. Claire,* for the minor children.

LAVERY, J. These two appeals arise from petitions brought to the trial court by the commissioner of children and youth services (DCYS) to terminate the parental rights of Gail M. as to her four children.

Appeal 10568 is an appeal by Gail M. from the termination of her parental rights with respect to three of her children. Appeal 10511 is an appeal by the commissioner from the trial court's decision not to terminate Gail M.'s parental rights with respect to the child Romance.

We will discuss each appeal separately, but the common factual underpinning to both appeals is the trial court's factual findings concerning Gail M., the mother of the four children. The termination proceedings brought against Gail M. by the commissioner concerning all four children were heard at the same time, and all four petitions were decided by the trial court in one thoughtful and well reasoned memorandum of decision.

On July 15, 1991, the trial court terminated the parental rights of Gail M. as to three of the children because they were found to be neglected and uncared for and because Gail M. had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of each child, she could assume a reasonable position in the life of each child. The trial court found that Romance was a neglected and uncared for child, and committed him to the department of children and youth services (DCYS) for eighteen months. The

trial court refused to waive the one year period provided in General Statutes (Rev. to 1987) § 17-43a (c), now General Statutes § 17a-112 (c),[1] before a termination proceeding can be brought after adjudication of a child as neglected and uncared for, and, therefore, did not reach the ground alleged for termination of parental rights regarding Romance.

The following essential facts are common to both appeals. Gail M., born on July 5, 1958, is the mother of four sons born between February, 1981, and November, 1988. Gail M. has been an alcoholic since the age of fourteen. She is a high school graduate who attended community college for a period of time. After graduation from high school, Gail M. worked for three years as a clerical aid, and subsequently worked at night at a public library. She has a long history of active alcohol abuse during the lives of all of the children. In August of 1981, she entered a fourteen day inpatient treatment program conducted by SCADD,[2] but she left prematurely. She was found at a gas station heavily intoxicated, and had to be returned to the detoxification unit.

In April, 1985, Gail M. asked DCYS to place her children in foster care because she was undergoing stress. She entered Pond House, a psychiatric facility, then returned to the SCADD program and began attending Alcoholics Anonymous (AA). Her children were returned to her in July, 1985. In March, 1986, she again asked DCYS to take her children, and she entered Norwich Hospital because she was experiencing auditory

---

[1] General Statutes § 17a-112 (c), formerly § 17-43a (c), provides: "The court may waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child."

[2] SCADD, a program funded by the Connecticut alcohol and drug abuse commission, is the southeastern council on alcoholism and drug dependency.

hallucinations. She was diagnosed as schizophrenic, undifferentiated type with alcohol problems. She was released to outpatient care at Lawrence and Memorial Hospital, assigned a psychiatric visiting nurse, and again began going to AA. Her children were returned to her in early 1987. On April 30, 1987, she requested DCYS to place the children in foster care, again citing stress. When the social worker for the agency arrived, she changed her mind and stated that she could handle the children. On the next day, May 1, 1987, she called DCYS and placed the children with the department. Since that date, the three oldest children have been in foster care. On the evening of May 1, 1987, she was taken by the police to Lawrence and Memorial Hospital because she was exhibiting suicidal tendencies, and she was transferred to Norwich Hospital where she received medication and counseling. She was released to outpatient care on June 1, 1987. In July, 1987, she discontinued her outpatient counseling at Lawrence and Memorial Hospital, her medication and her participation in AA. In the same month, she was arrested for fighting. On October 31, 1987, she was admitted to Norwich Hospital due to her drinking and hallucinations. On November 4, 1987, she was discharged from the hospital because she would not cooperate in the required treatment.

On November 5, 1987, DCYS brought Gail M. to Willie J. Coleman, a psychologist, for a psychological evaluation with her three children; she left during the evaluation. On December 1, 1987, the three children were committed to DCYS by judicial order. Gail M. set up a visitation schedule with her sons' foster mothers. She refused both counseling and medication and was, therefore, denied unsupervised and overnight visitations with her children by DCYS. She agreed in July, 1988, to weekly counseling sessions with James J. Connelly, a psychologist. In August, 1988, Gail M. was

allowed to take the three children for an unsupervised visit to a park for the day. In September, 1988, she was allowed to take the children for another unsupervised day visit. In October, 1988, Gail M. and the three children began biweekly family therapy sessions with Connelly. Concurrently, Gail M. continued her weekly sessions with him. In October, 1988, Gail M. informed DCYS that she was pregnant. She was allowed an overnight visit with the three children on November 4, 1988. Gail M. gave birth to Romance on November 11, 1988. On November 18, 1988, Gail M. had an overnight visit with the three older children, and again during the Thanksgiving holiday from November 23 to November 26, 1988.

On December 2, 1988, Gail M. was intoxicated when she arrived to pick up the three older children for the weekend. She had brought Romance with her. Romance was not properly dressed for the winter weather. When Romance's inadequate attire was brought to Gail M.'s attention, she angrily threw the baby to a thirteen year old. Gail M. and the four children were brought by the foster family to Gail M's apartment where she passed out. The police were summoned and Gail M. was arrested. The four children were turned over to DCYS, who then brought the termination and coterminus petitions which are the subject of this appeal.

### In re Jason M. et al.

The respondent first claims that the trial court incorrectly found by clear and convincing evidence that she had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the ages and needs of her children, she could assume a responsible position in their lives. General Statutes (Rev. to 1987)

§ 17-43a (b) (3), now General Statutes § 17a-112 (b) (2).[3]
The findings of the trial court will be disturbed only
if they are not supported by the evidence and are, in
light of the evidence in the whole record, clearly erro-
neous. *In re Luis C.*, 210 Conn. 157, 166, 554 A.2d 722
(1989). The statute in question requires the trial court
to analyze the respondent's rehabilitative status as it
relates to the needs of the particular child, and further
that such rehabilitation must be foreseeable "within a
reasonable time." *In re Luis C.*, supra, 167. In this case,
the trial court's findings, which are supported by the
record, show, in addition to the previously recited facts,
that the court had the benefit of testimony from psy-
chologists Robert D. Meier, Coleman, and Connelly,
and from Michael A. Nelken, a psychiatrist. The court
accepted as factual the following conclusions and
recommendation of Meier in his report of July 12, 1989.
"It is expected that Gail M. will continue to show
periods of relative stability followed by significant
deterioration of the kind leading to placement of her
children. The children are likely to experience disrup-
tion in their care and environment over the next sev-
eral years. The prognosis for mother is very guarded
with respect to any significant changes within the next
two to three years, although periods of stability may
be present."

---

[3] General Statutes § 17a-112 (b), formerly § 17-43a (b), provides: "The
superior court upon hearing and notice, as provided in sections 45a-716
and 45a-717, may grant such petition [for termination] if it finds, upon clear
and convincing evidence, that the termination is in the best interest of the
child and that, with respect to any consenting parent, such parent has volun-
tarily and knowingly consented to termination of his parental rights with
respect to such child or that, with respect to any nonconsenting parent,
over an extended period of time, which, except as provided in subsection (c)
of this section, shall not be less that one year . . . (2) the parents of a
child who has been found by the superior court to have been neglected or
uncared for in a prior proceeding have failed to achieve such degree of per-
sonal rehabilitation as would encourage the belief that within a reasonable
time, considering the age and needs of the child, they could assume a respon-
sible position in the life of the child . . . ."

The trial court carefully analyzed and made findings based on substantial evidence in the record of the needs of the three older boys. The findings show that each has deeply rooted problems that require immediate attention, and that the respondent's alcohol addiction is severe, impairing her ability to parent her children and exacerbating her psychiatric problems, and that she would be unable to care for her children in the next several years. We have reviewed the record, transcript, exhibits and briefs and are unable to conclude that the facts found by the trial court as set out in the memorandum of decision are clearly erroneous. We conclude that the trial court considered the relevant statutory criteria and that its findings were supported by clear and convincing evidence pursuant to General Statutes (Rev. to 1987) § 17-43a (b) (3).

The respondent next claims that the petitioner did not prove by clear and convincing evidence that termination is in the best interest of the children pursuant to General Statutes (Rev. to 1987) § 17-43a (d), now § 17a-112 (d).[4] The trial court, in its memorandum of decision, made specific findings regarding the six statu-

---

[4] General Statutes § 17a-112 (d), formerly § 17-43a (d), provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (3) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (4) the age of the child; (5) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, commu-

tory factors necessary in the adjudicatory phase for consideration in a proceeding to terminate parental rights. See footnote 4, supra. The trial court found that DCYS offered and provided many services to the respondent mother. The respondent violated court orders on several occasions by drinking during her visits with the children. The children have good relations with their foster mothers and are responsive to their mother, Gail M., and regard her as an authority figure. The children were born in 1981, 1984 and 1985. The mother has maintained contact with and interest in the children, but her severe addiction to alcohol, the poor prognosis for her successful rehabilitation, and her failure to recognize the problem and rehabilitate herself make it improbable that she will be able to take the children in the foreseeable future. Finally, up until 1988, DCYS's goal was reunification of the family; the foster parents did not hinder Gail M.'s relationship with the children. It was not economic circumstances that prevented the respondent from maintaining a meaningful relationship with her children, but, rather, the respondent's severe addiction to alcohol.

The trial court considered the relevant statutory criteria and its findings were supported by clear and convincing evidence pursuant to General Statutes (Rev. to 1987) § 17-43a (d). The trial court's factual findings and conclusion are supported by the evidence in the record and are not clearly erroneous. The record unambiguously shows that DCYS gave Gail M. every opportunity available to rehabilitate herself so that she could regain custody of the three older children. The respondent challenged the trial court's findings of five

nications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (6) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent.''

of the six statutorily established factors. We conclude that the findings of the trial court are supported by the evidence and we will not disturb them as they are not clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The third claim of the respondent is that the trial court should not have admitted evidence of her treatment at a Connecticut alcohol and drug abuse commission (CADAC) facility in violation of her right to confidentiality under General Statutes § 17-155b and 42 U.S.C. § 290. It is pertinent to a discussion of this claim to note that during the termination proceedings on April 27, 1990, Gail M.'s physical condition was such that the trial court asked Coleman, who was in the courtroom, to testify as to her condition then and there. Coleman concluded that Gail M. was intoxicated in the courtroom. The trial court found her in contempt and ordered her to enter a detoxification program for the full twenty-eight days. She entered the Boneski Treatment Center, which is a licensed public treatment facility as defined by General Statutes § 17a-621 (17), and is administered by CADAC. Pursuant to 42 USC § 290dd-3 (b), (c) and (d) and the applicable federal regulations, the trial court held a thorough and lengthy hearing in which it weighed the public interest in favor of disclosure against the potential injury to Gail M., to the physician-patient relationship and to the treatment services. After the hearing, the trial court ordered disclosure of some of the records, which Gail M. claims was improper. General Statutes § 17a-630 (c), formerly § 17-155b (b), which addresses the issue of confidentiality of records, prohibits: "disclosure of the identity, diagnosis or treatment of any such patient that would constitute a violation of federal statutes concerning confidentiality of alcohol or drug patient records and any regulations pursuant thereto, or as they may be

amended from time to time, The commission shall adopt regulations to protect the confidentiality of information obtained by it."

The applicable federal statute, 42 U.S.C. § 290 dd-3, sets out *only* three circumstances under which the records of the identity, diagnosis, prognosis or treatment of any patient that are maintained in connection with the performance of any program or activity relating to alcoholism or alcohol abuse, education, training, treatment, rehabilitation or research can be involuntarily disclosed. In *all* other instances, 42 U.S.C. § 290 dd-3 mandates that information concerning identity, diagnosis, prognosis, or treatment of any patient must remain confidential.

Paragraphs A and B of 42 U.S.C. § 290 dd-3 (b) (2) are inapplicable. The applicable paragraph, paragraph C as hereinafter set forth, requires a finding of good cause: "(C). If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure."

42 C.F.R. § 2.63a (a) (2) states that the court may authorize disclosure if it is "necessary to protect against . . . child abuse and neglect . . . .[5]

---

[5] 42 C.F.R. § 2.63 provides: "CONFIDENTIAL COMMUNICATIONS. (a) A court order under these regulations may authorize disclosure of confidential communications made by a patient to a program in the course of diagnosis, treatment, or referral for treatment only if: (1) The disclosure is necessary to protect against an existing threat to life or of serious bodily injury, including circumstances which constitute suspected child abuse and neglect and

In *State* v. *Rollinson,* 203 Conn. 641, 656, 526 A.2d 1283 (1987), our Supreme Court held that: "The privilege which the defendant seeks to attach to his statements at the detoxification unit is a statutory privilege and not a constitutional one. Under the circumstances, the scope of our review of the ruling of the trial court is limited. The trial court's ruling is analogous to the exercise of discretion that is required whenever the state seeks to introduce a defendant's prior criminal behavior into evidence. When a trial court, recognizing the general rule excluding such evidence, determines nonetheless that in a particular case the probative value of prior crimes evidence outweighs its prejudicial effect, we reverse such a decision 'only where abuse of discretion is manifest or where an injustice appears to have been done. . . .' " (Citations omitted.)

In this case, the trial court admitted only a small part of the Boneski treatment records after a review of all the documents in the record. The critical issue in this case is whether Gail M. has failed to achieve such a certain degree of "personal rehabilitation." Her active alcoholism is a key element. The trial court ruled that Gail M.'s privilege must give way to the best interest of the children. The trial court determined that there was good cause for disclosure of the treatment information and that it was highly relevant to the issue of the respondent's mental health, an issue that the respondent herself raised when she testified that she was capable of responsibly parenting her children. Under the applicable federal regulations, 42 C.F.R. 2.63 (a) (3), disclosure is allowed when "the patient

---

verbal threats against third parties; (2) The disclosure is necessary in connection with investigation or prosecution of an extremely serious crime, such as one which directly threatens loss of life or serious bodily injury, including homicide, rape, kidnapping, armed robbery, assault with a deadly weapon or child abuse with neglect . . . ."

offers testimony or other evidence pertaining to the content of the confidential communication." We do not find that in weighing the relevant statutory criteria and making its determination that there was good cause for limited disclosure of confidential information, the trial court abused its discretion in admitting the evidence of Gail M.'s treatment at the Boneski Treatment Center. See *In the Matter of Dwayne G.*, 97 Misc. 2d 333, 336, 411 N.Y.S.2d 180 (1978).

In addition, Gail M. claims that General Statutes §§ 52-146d and 52-146e[6] were violated since she was interviewed at Boneski by a psychiatrist. We find this claim to be without merit. An exception to the confiden-

---

[6] General Statutes § 52-146d provides: "PRIVILEGED COMMUNICATIONS BETWEEN PSYCHIATRIST AND PATIENT. DEFINITIONS. . . .

"(1) 'Authorized representative' means (A) a person empowered by a patient to assert the confidentiality of communications or records which are privileged under sections 52-146c to 52-146i, inclusive, or (B) if a patient is deceased, his personal representative or next of kin, or (C) if a patient is incompetent to assert or waive his privileges hereunder, (i) a guardian or conservator who has been or is appointed to act for the patient, or (ii) for the purpose of maintaining confidentiality until a guardian or conservator is appointed, the patient's nearest relative;

"(2) 'Communications and records' means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist, or between a member of the patient's family and a psychiatrist, or between any of such persons and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment, wherever made, including communications and records which occur in or are prepared at a mental health facility;

"(3) 'Consent' means consent given in writing by the patient or his authorized representative;

"(4) 'Identifiable' and 'identify a patient' refer to communications and records which contain (A) names or other descriptive data from which a person acquainted with the patient might reasonably recognize the patient as the person referred to, or (B) codes or numbers which are in general use outside the mental health facility which prepared the communications and records;

"(5) 'Mental health facility' includes any hospital, clinic, ward, psychiatrist's office or other facility, public or private, which provides inpa-

tiality statute is contained in General Statutes § 52-146f (5), which provides that "(5) Communications or records may be disclosed in a civil proceeding in which the patient introduces his mental condition as an element of his claim or defense . . . . and the court or judge finds that it is more important to the interests of justice that the communications be disclosed than that the relationship between patient and psychiatrist be protected." We conclude that when the mental health of a parent in a termination of parental rights case is an issue, as it is in this case, the best interest of the child requires that the privilege between psychiatrist and patient give way once it is shown to the trier of fact that the "communications and records" are relevant to the issues in the case. We further conclude that the trial court carefully reviewed the rec-

tient or outpatient service, in whole or in part, relating to the diagnosis or treatment of a patient's mental condition;

"(6) 'Patient' means a person who communicates with or is treated by a psychiatrist in diagnosis or treatment;

"(7) 'Psychiatrist' means a person licensed to practice medicine who devotes a substantial portion of his time to the practice of psychiatry, or a person reasonably believed by the patient to be so qualified."

General Statutes § 52-146e provides: "DISCLOSURE OF COMMUNICATIONS. (a) All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative.

"(b) Any consent given to waive the confidentiality shall specify to what person or agency the information is to be disclosed and to what use it will be put. Each patient shall be informed that his refusal to grant consent will not jeopardize his right to obtain present or future treatment except where disclosure of the communications and records is necessary for the treatment.

"(c) The patient or his authorized representative may withdraw any consent given under the provisions of this section at any time in a writing addressed to the person or office in which the original consent was filed. Withdrawal of consent shall not affect communications or records disclosed prior to notice of the withdrawal."

ords and admitted only those relevant, and did not abuse its discretion in doing so.

Gail M. next claims that the trial court should not have admitted two service agreements dating back to 1981 because they are remote in time and not relevant. A review of the record shows that the agreements were relevant, and were not too remote in time, since Gail M.'s longstanding active alcoholism is a central issue in this case. The trial court did not abuse its discretion in admitting these agreements.

Gail M.'s final claim is that certain police reports were erroneously admitted. A review of the reports and the transcript shows that what was in the reports was the observation of the officers making the entries and that the entries in every aspect conformed to the business records statutory exception to the hearsay rule, contained in General Statutes § 52-180.[7]

## IN RE ROMANCE

This is an appeal by the commissioner of children and youth services from the denial by the trial court of the termination petition of the parental rights of Gail M. regarding the child Romance pursuant to a coterminus proceeding brought under General Statutes (Rev. to 1987) § 17-43a (e), now § 17a-112 (e). The commissioner claims that the trial court (1) improperly refused to waive the one year waiting period by ignoring the totality of the circumstances up to the last day of trial and in failing to consider the best interests of the child,

---

[7] General Statutes § 52-180 provides in pertinent part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event within a reasonable time thereafter. . . .

"(d) The term 'business' shall include business, profession, occupation, and calling of every kind."

(2) should have first determined whether grounds for termination existed before reaching the issue of waiving the one year waiting period, (3) incorrectly failed to find that the commissioner met her burden of proof, and that the petition should have been granted, and (4) should not have considered the question of waiver because the amendment of the petition on March 29, 1990, takes it outside the operation of § 17a-112 (c). We affirm the judgment of the trial court.

There are additional facts relevant to this appeal. Romance was born to Gail M. on November 11, 1988. After his birth, he remained in her custody even though his three siblings had been adjudicated neglected and uncared for and committed to DCYS. Romance was removed from Gail M.'s custody on December 2, 1988, as the result of an incident in which Gail M., while intoxicated, threw Romance, who was caught by a thirteen year old child. Shortly thereafter, Gail M. and her four children were brought back to her apartment, where she passed out. On January 5, 1989, a coterminus petition was brought under General Statutes § 17-43a (e), now § 17a-112 (e).[8]

The first claim of the commissioner is that because General Statutes § 17a-112 (c) empowers the court to waive the one year requirement of § 17a-112 (b) upon finding that such waiver is necessary to promote the best interest of the child, that statute raises a disposi-

---

[8] General Statutes § 17a-112 (e), formerly § 17-43a (e), provides: "Any petition brought by the commissioner of children and youth services to the superior court, pursuant to subsection (a) of section 46b-129, may be accompanied by a petition for termination of parental rights filed in accordance with this section with respect to such child, notwithstanding that such child has not been committed to the commissioner of children and youth services. Notice of the hearing on such petitions shall be given in accordance with sections 45a-716 and 45a-717. The superior court, after hearing, in accordance with the provisions of subsection (b) of this section, may, in lieu of granting the petition filed pursuant to section 46b-129, grant the petition for termination of parental rights as provided in section 45a-717."

tive rather than an adjudicatory issue, and requires the court to consider the facts up to and including the last day of the trial.

The court found in its refusal to waive the one year requirement that up until the December 2, 1988 incident, DCYS had no plans to remove Romance from Gail M. When DCYS and Gail M. had met on November 21, 1988, for a treatment review, Romance was dressed appropriately. The court took into account all of the facts of the case, including a report from Coleman. The court especially took into account Meier's report of March 31, 1989, an evaluation that was requested by DCYS to assist with decisions regarding Romance. The court set forth, verbatim, recommendations four and five of Meier's report in its memorandum: "4. Since this evaluation was directed to address only her behavior with respect to Romance, her ability to care for this child has only been assessed during a limited period of time. It is therefore recommended that a service agreement be established with Gail M., spelling out clearly her responsibilities in terms of visiting the child, gaining greater responsibility for the care of the child, following through with alcohol and substance abuse treatment, and continuing in psychotherapy for a period of at least six months. If at the end of that time she has shown an inability to rehabilitate herself, it is recommended that consideration be given to placing Romance in a permanent home other than that of Gail M.

"5. It is recommended that a psychiatric consult be scheduled for Gail M. in order to assess the appropriateness of medication. If such a treatment is recommended, this should also be addressed by the service agreement."

The trial court further found that the mother's ongoing progress of treatment, as shown in DCYS's treatment plans of May 1, 1988, and November 1, 1988,

deteriorated following the filing of the coterminus petition. The court implied in its memorandum that the commissioner should have withdrawn her petition to terminate, and followed Meier's recommendations set forth above.

The procedure for termination of parental rights is statutory and must be strictly followed because it affects a constitutional liberty interest of the parent. The one year rule appears twice in the statutory scheme of termination, in General Statutes § 17a-112 (b)[9] and again in § 17a-112 (c).[10] It first appears in § 17a-112 (b) "with respect to any nonconsenting parent, over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year . . . (3) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being." The court must find that statutory grounds as alleged were met by clear and convincing evidence, and a condition precedent to finding that the grounds for termination as alleged exist is a finding that "with respect to any nonconsenting parent over an extended period of time, which . . . . shall not be less than one year," one or more of the four listed statutory criteria have been met. The decision of the court that the condition as to Romance did not exist for at least a year is an adjudicatory one. There is nothing, however, either in the statutory scheme or in the case law to prevent the trial court, once it comes to the conclusion that the ground alleged did not exist for a period of at least one year, from deciding under § 17a-112 (c) whether, under the totality of the circumstances, it is in the child's best interest to waive the one year requirement. "Because the statute entrusts the decision concerning waiver to the discretion of the trial court, the only issue on appeal

[9] See footnote 3, supra.
[10] See footnote 1, supra.

is whether the trial court abused its discretion." *In re Baby Girl B.*, 224 Conn. 263, 301, 618 A.2d 1 (1992). We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. *In re Cynthia A.*, 8 Conn. App. 656, 660, 514 A.2d 360 (1986). The trial court, with great specificity, taking into account both Coleman's and Meier's reports, as well as all of the facts of the case, as they relate to both Romance and his three siblings, found from the totality of the circumstances that a waiver is not necessary to promote the best interest of the child. We find no basis for a conclusion of abuse of discretion on the record in this case.

DCYS next claims that the trial court should have determined whether the grounds alleged existed before reaching the issue of waiving the one year waiting period. We have already covered this issue and find no merit to the claim.

The commissioner next claims that the trial court's findings support a conclusion that she met her burden of proof by clear and convincing evidence, and the petition should have been granted. This claim also is without merit. The only ground alleged is General Statutes § 17a-112 (b) (3): "[T]he child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance, or control necessary for his physical, educational, moral or emotional well-being." This ground was also alleged concerning Gail M.'s three older children. The trial court found the following on this allegation with regard to the three older children. "The children have remained in placement since the respondent voluntarily requested placement of the children on May 1, 1987. Counsel was not appointed to represent her until October 14, 1987. Psychological evaluations to assist in determining what services should be implemented on behalf of the respondent and her children were not concluded until November of 1987. The fact that the respondent saw fit to attempt

to work with DCYS towards the return of her children cannot be characterized as a failure to challenge the foster care placements. There is no clear and convincing evidence that the respondent failed to provide the proper care, guidance or control necessary for the physical, educational, moral or emotional well-being of her children during the periods of time that they were with her. The court concludes that DCYS has failed to prove this ground by clear and convincing evidence.''

The trial court's decision regarding Romance M. is consistent with its decision concerning Gail M.'s older children. The trial court did not "misapply the facts to the statutory requirements," nor were the conclusions drawn "inconsistent with the findings of fact" as alleged by the commissioner. The trial court did not reach a determination of whether the commissioner proved by clear and convincing evidence that Romance M. was denied, by acts of commission or omission, the care and control necessary to his well-being in light of its finding that a waiver was unnecessary. The statute *mandates* that the conditions exist for a minimum of one year. In the absence of a discretionary waiver of that one year requirement, the court could have found (a) that the grounds for termination were not proven by clear and convincing evidence or (b) that the grounds for termination had been proven but that they had not been in existence "over an extended period of time, which . . . shall not be less than one year." General Statutes § 17a-112 (b). "Whether the grounds for termination [of parental rights] exist for not less than one year is a question of fact to be determined by the [trial] court from the facts and circumstances in any given case." *In re Saba P.,* 13 Conn. App. 605, 610, 538 A.2d 711, cert. denied, 207 Conn. 811, 541 A.2d 1241 (1988).

The trial court made the decision that the grounds existed for less than one year, and in its discretion did

not waive the one year precondition of the existence of one of the four conditions. There was no abuse of the court's discretion.

The commissioner's final claim is that the March 29, 1990 amendment to the petition, made during the trial, took the case out of the one year statute. The amendment was offered by the commissioner and granted by the trial court over the objection of Gail M.

The amendment is as follows: "(1) On or about March 6, 1990, the respondent Gail M. was admitted to the Boneski Treatment Center and underwent alcohol detoxification.

"(2) On March 15, 1990, the respondent was scheduled to have a visit with two of her children at the office of DCYS. Even though the respondent confirmed with DCYS social worker on March 14, 1990 that she [would] attend, she nonetheless failed to show or give an advance notice of her nonattendance."

The amendment alleged additional facts, not additional grounds, and thus relates back to the date of the petition. "It is well settled that amendments, unless they allege a new cause of action, relate back to the date of the complaint." *Baker* v. *Baker,* 166 Conn. 476, 486, 352 A.2d 277 (1974), and cases cited therein, overruled on other grounds, *LaBow* v. *LaBow,* 171 Conn. 433, 441, 370 A.2d 990 (1976).

In the adjudicatory phase of termination proceedings, the court determines the validity of the grounds alleged in the petition, and therefore is limited to events preceding the filing date of the petition. In the disposition phase, the court is concerned with what action should be taken in the best interests of the child, and in that phase the court is entitled to consider facts occurring until the end of the trial. *In re Shannon S.,* 41 Conn. Sup. 145, 562 A.2d 79, aff'd, 19 Conn. App. 20, 560

A.2d 993 (1988). The facts alleged in the amended petition could not be considered in the adjudicatory phase, and the trial court correctly considered the waiver question. It must also be noted that, since the amendment applied to all four siblings, the court could use it in the dispositive phase of Romance's three siblings. This was a joint trial.

The judgment is affirmed.

In this opinion the other judges concurred.