[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for termination of parental rights instituted by the Department of Children and Families (DCF) on June 30, 1995 at the Superior Court for Juvenile Matters in New Haven, subsequently transferred to the Child Protection Session CT Page 6798 in Middletown for trial. The biological parents of the children are Leatrice G. and Marvin D. M. An attorney was appointed to represent the children and an attorney was appointed to represent the parents. The respondents themselves were occasionally present during the trial which began on December 3, 1996. On the first day of trial the respondent mother failed to appear due to a claimed illness of a younger child. She indicated that she was unable to get day care for the child and accordingly the case was suspended for the day. The court directed a social worker from the DCF to verify the illness and to insure that the respondent mother would be in court at 10:00 a.m. on the following day. During the five days to which the case was assigned, the respondents left court early on several days and did not appear at all on others. A social services aid from the DCF appeared at their apartment daily to pick them up and bring them to court, however, on some occasions they indicated they did not wish to go.
The court heard from seven witnesses and received into evidence over thirty documents, including evaluations, social studies, police records and treatment plans. The court has fully considered the exhibits and testimony of all witnesses. On the first day of trial the petitioner amended her petition to withdraw all grounds except the ground alleging that the children have been found in a prior proceeding to have been neglected and the parents have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the children they could assume a responsible position in the lives of their children. The court concludes that the petitioner has met her burden of proof by clear and convincing evidence.
FACTUAL FINDINGS
The court makes the following factual findings. The minor child Marvin was born on March 17, 1988 and the minor child David was born on July 26, 1989. At the date of the trial the mother was 36 years of age and the father, 41 years of age. The case first came to DCF's attention when Yale New Haven Hospital reported that both David and Marvin had high lead levels in their blood. The first hospitalization occurred on June 3, 1991 and both Marvin and David were briefly hospitalized on several occasions for abnormally high lead levels. The parents had been warned by the medical providers to use diligence in keeping the children protected from continued exposure. The initial petition CT Page 6799 alleged that both parents had failed to protect their children from lead environments, they had failed to keep medical appointments for the children and refused supportive services. The first petition alleging neglect was made on August 28, 1991; however, by September 26, 1991, revocation of commitment was granted to the mother because the parents had moved and no longer lived in the apartment with the hazardous environment and at that time the parents were receiving supportive services from family preservation.
On September 5, 1991 another child was born to Leatrice G. This child was born with a positive toxicity to cocaine. Five months later on February 18, 1992, this child died. Initially it was thought that the child had had a heart attack. Other tentative diagnoses proved incorrect. The medical examiner determined that the child died of a sudden and unexpected death in infancy associated with systemic cocaine exposure. While initially the DCF were concerned with Marvin and David's high lead levels, the Department was now concerned that the parents were unable to protect the children from cocaine ingestion and that the parents, themselves, were chronically impaired due to substance abuse.
An Order of Temporary Custody was obtained in February 1992, and on February 28, 1992 the children were placed in the foster home of Ms. D. The children have been in that foster home for nearly five years.
The biological mother of the children is Leatrice G. She has a high school education and one and one-half years of technical college in North Carolina. When she was nineteen, she had a female child, Tameka. In 1986 the DCF received a referral that Tameka had been sexually abused due to Leatrice's inability to protect her. The six year old child had genital herpes and had been sexually molested. She was removed from her mother's care at age six and the maternal grandparents obtained custody through a probate court order.
In 1987, Leatrice met Marvin and at the time they were both drug-free, according to Leatrice. By the end of 1987 they began using cocaine. Leatrice indicated that she stopped using drugs during her pregnancy with Marvin Jr., who was born healthy. On July 26, 1989 when she gave birth to David, however, the child was positive in a toxicology screen for cocaine. The parents were at that time living in an apartment in New Haven, which was CT Page 6800 hazardous due to lead paint found on the walls, windows and rooms throughout the apartment.
After the removal of the children in February 1992, the mother was to begin outpatient drug treatment at the APT Foundation. She didn't, because two of her urine tests proved positive for cocaine. Thereafter, the Department referred her to inpatient drug treatment at Gaylord Hospital; however, she left that program, refusing to return. Two years later, in September 1994, Leatrice gave birth to a female child, Diona, who was born positive for cocaine. The hospital had concerns that Leatrice was inappropriate caring for this high risk newborn and was having difficulty feeding the child.
The Department attempted to work with Leatrice and recommended Visiting Nurse Association care and The Mother's Project, a drug treatment program for the mother and baby. The case worker met with Leatrice on a weekly basis, each time attempting to reinforce the seriousness of complying with DCF's recommended services for her and her child. For reasons which were not disclosed at the trial, apparently the DCF attempted to obtain an order of custody of this child that was denied at the Superior Court for Juvenile Matters in New Haven.
The case worker continued to work with both parents to assist them in maintaining their baby in the home. They were provided bus passes and visitation with their other children. They were recommended to drug treatment, both inpatient and outpatient, and to the Yale Child Study Center for home services. The records admitted into evidence, including treatment plans, reflect continued efforts to work with mother to obtain and follow through on drug treatment, all of which were unsuccessful.
The father of these children, Marvin M., Sr., indicates he is a graduate of a New Haven high school and has two years at the University of Connecticut at Storrs. He reports to having worked for the Connecticut Citizens Action Group, as a substitute teacher and counselor, as a teacher's aide and as a directory assistance operator. It is clear, however, he has not worked in many years, probably since 1987 or 1988. In his evaluation with Dr. Mantell, Mr. M. reported he is suffering from a neurological condition. He indicated to Dr. Mantell that he had two years of college and had never been in special education, yet he could not recite the alphabet on two attempts. Dr. Mantell believed that Mr. M. could have short and long term cognitive impairments from CT Page 6801 cocaine abuse. Dr. Mantell concluded that Mr. M. is impaired. Mr. M. admitted to Dr. Mantell that he used cocaine, but said that it was not a serious problem. He did not feel that he needed professional help as recently as March 1996. His performance before Dr. Mantell was borderline and Dr. Mantell recognized there were impairments in his general cognitive functioning.
Mr. M.'s attorney urged the court to place great weight upon the fact that Leatrice and Marvin are now obtaining or about to obtain a better apartment than their present quarters, which will have four bedrooms. Further, Marvin has been able to secure a payment of $68 per month from social security, $420 from social security disability and $200 per month from state supplemental assistance. In addition to that, Marvin and Leatrice visit with their children in foster care approximately twice a month, even though they are permitted weekly visitation. The foster mother indicates that their visits generally average twice per month. The Court further recognizes that both Leatrice and Marvin have a very strong feeling of affection for their children and that the children, in some way, reciprocate.
With respect to their visitation with the children, Dr. Mantell indicated that it was unlikely that Leatrice and Marvin would ever really rehabilitate because their difficulties are so well established and continuous over a very long period. Dr. Mantell indicated that the inconsistencies of the parents' visitation was due to their life style. The children, on one hand, would like their parents to regularly attend visitation, yet are frequently disappointed, which intensifies their sense of loss and frustration. The oldest boy, Marvin, told Dr. Mantell that he was going to cry if his parents didn't come, yet the child had a "well established expectation that the parents weren't going to come."
Over the course of the three evaluations Dr. Mantell did on this family, he ultimately concluded that the children's attachment has been significantly lessened by the parents' unreliability. The foster mother gave an example in her testimony: Ms. D. said that she told the parents she would not provide costumes for the children at Halloween. Leatrice called the boys and told them that their father was out buying costumes for the children. When Halloween arrived, the parents notified the boys that they didn't have any costumes. The foster mother indicated that David gets very hostile and wets the bed at times like this. Marvin just regresses and gets quiet. What is CT Page 6802 unfortunate in this case is that the parents, because of their lifestyle (that is, their cocaine abuse), have not been physically, mentally and emotionally available for these children on a continuous basis. The foster mother, who has done an extremely good job of raising these two boys, is not available as an adoptive parent. She is very anxious that the children be placed for adoption in a two-parent family. The foster mother indicated that the boys need a father and a mother image and that they need a mom and a dad. "I believe the children love their parents, that's not the point." (Testimony of foster mother.) Dr. Mantell concluded that in a sense the foster mother was both the psychological mother and psychological father of these children.
Marvin, Sr., through his attorney, argues that he has successfully completed a drug program, is arranging for better housing, has arranged for the social security and other income so that he now has a stable income, and accordingly has met the expectations of the court.
The court finds that Marvin Sr. did complete the drug program, but was not a successful graduate of the program. As recently as March 1996, in a letter from the APT Foundation, Central Treatment Unit, to LaVerne Blackwell of the Department of Children and Families, the senior counselor, Peter Medina, who testified at trial, indicated that Mr. M. had been seen at the Central Treatment Unit for a substance abuse evaluation
 medical condition that could justify this action. It is strongly recommended that further assessment for substance abuse be provided, and a psychiatric evaluation also appears to be appropriate. (Petitioner's Exh. 23, Letter from P. Medina to L. Blackwell, dated 3/25/96.)
Marvin Sr. has a criminal history as a convicted felon. He has been arrested for possession of narcotics with intent to sell; possession of drug paraphernalia, a larceny; failure to appear; and a sale of narcotics conviction on February 21, 1995, for which he received a sentence of five years, execution suspended with three years probation. He is presently on probation for that drug conviction. Three months later, in May 1995, Marvin was arrested for possession of narcotics. (See Petitioner's Exh. 20A.) On August 4, 1995, a rearrest warrant was issued for failure to appear in the first degree and bond was set at $15,000. (Petitioner's Exhibit 29.) CT Page 6803
As recently as July and August 1996, Marvin Sr. has tested positive for the presence of cocaine in his blood. He has an unexecuted five-year sentence imposed upon him, he has an outstanding rearrest warrant for failure to appear in court on charge of possession of narcotics and represents to the court that he has rehabilitated himself such that two children should be placed in his care.
Leatrice has been equally unsuccessful with her efforts to break her habit. The few times she appeared in court, she presented as a sad and overwhelmed figure. Her recent urine screenings have indicated results positive for the presence of cocaine on June 24, July 10, August 5, August 22 and August 29, 1996. In addition, she has failed to continue in her treatment program. She has an outstanding warrant dating from February 1995, when she failed to appear in court on a criminal charge of Disorderly Conduct (Conn. Gen. Stat. § 53a-182). (Petitioner's Exh. 20B.)
Recalling that these children have been in foster care for five years waiting for reunification with their parents; recalling further that these parents had a child that died of cocaine ingestion; recalling that DCF has offered numerous treatment modalities to the parents to free them from the disabling chains of cocaine addiction, should the court further these children's unrealistic fantasy of reunification and place them in a state of permanent impermanence? The answer is self-evident. Neither of the parents is reliable; they have both failed to appear in court and to appear for regular visitation; they are both subject to immediate arrest and incarceration; neither of these parents has in five years been able to break their cocaine habit and neither of these parents has any appreciation of the destructiveness of their habit to the lives of their children. They are so severely impaired that they are physically and emotionally unavailable to consistently and reliably parent any child.
ADJUDICATION
With respect to the statutory grounds for termination of parental rights, the court finds by clear and convincing evidence that on July 2, 1992 this court (Riddle, J.) found Marvin and David to be neglected. Since the adjudication of neglect, the parents have failed to achieve such degree of personal CT Page 6804 rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, that they could assume a responsible position in the life of this child in violation of General Statute § 17a-112 (b)(2). The court finds that this ground has existed for more than one year.
DISPOSITION
It is not sufficient to find that grounds for termination exist. The court must also determine, pursuant to General Statute § 17a-112 (d), as amended, if a termination of parental rights is in the best interests of the children. The court must make this finding by clear and convincing evidence. In re RomanceM., 30 Conn. App. 839, 846-47 (1993), appeal dismissed, 229 Conn. 345
(1994). See also Practice Book § 1050.1(3). The court will make the best interest determination after consideration of the factual findings required by General Statute § 17a-112
(d).
1) Appropriate and timely services were provided by the Department of Children and Families, including counseling, drug treatment programs, transportation assistance, and visitation coordination. See also paragraph 11 of the Social Study, Petitioner's Exhibit 1, pages 16-18.
2) The court finds by clear and convincing evidence that the Department of Children and Families made reasonable efforts to reunite the parents and children given the situation and circumstances as far as possible. The parents have remained chronically addicted to drugs and are not interested in any of the programs which might lead to their long-term detoxification. See also pages 20 and 21 of the Social Study for other services offered, to demonstrate the reasonableness of DCF's efforts.
3) The Department, with the approval of the Court, set reasonable and realistic expectations on April 9, 1992 to reunify the family. By far, the most important was "no substance abuse." It is singularly, the breadth and depth of this case. The parents were impaired when the children were removed five years ago and they remain impaired in 1996.
4) The children have strong emotional ties with the foster mother, who has provided the physical, emotional and educational support these children have needed. Regrettably, she is unwilling to continue in that role. These children desperately need to be CT Page 6805 able to establish a healthy, deep attachment to a consistent, reliable, nurturing family. The challenge to DCF is great to find such a family since these boys are seven and eight. Further delay in placing these children will only work to their great detriment.
5) Finding regarding the ages of the children. These children are seven and eight years of age. They require stability of placement and continuity of care. Uncertainty is a corrosive condition for children. A child requires a sense of personal security and belongingness to a familial group. There must be certainty, consistency and stability in these children's lives to overcome the effects of their already precarious beginnings in life, for example, drugs, lead poisoning, possible poor nutrition during gestation, and probable neglect, as previously found.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interest of the children to return them to their home in the foreseeable future. The parents have not made realistic and sustained efforts to conform their conduct to even minimally acceptable parental standards. Giving them additional time would not likely bring their performance, as parents, within acceptable standards sufficient to make it in the best interests of the children to be reunited with them. In re Luis C., 210 Conn. 157
(1989); In re Juvenile Appeal (Docket No. 9489), 183 Conn. 11, 15
(1981). No objective observer has suggested that these parents are likely to remain substance-free.
7) Finding regarding the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable acts or conduct of others or by economic circumstances. While the parents' means were limited, economic factors did not prevent regular, continuing contact with either the children or the foster mother. As far as is known, the children and parents lived in reasonable geographic proximity, connected by regular inter-city bus transportation. The Department attempted to encourage visitation. No unreasonable conduct is noted. The respondents argue that DCF acted improperly in restricting or terminating overnight visitation for the children. The court finds that this was prudent and appropriate when the agency learned of the parents' continued use of cocaine and their refusal to enter in-patient treatment.
Further, the court is mindful of the overwhelming policy in CT Page 6806 support of requiring parents to financially support their children. In re Bruce R., 234 Conn. 194 (1995). There has been no showing in this case that either parent has ever adequately supported these children. The only assistance that these children receive is already from state and federal agencies. The termination of these parental rights will only free these children for possible adoption by persons who may be able to adequately support them.
ORDER
Based upon the foregoing findings, the court concludes that it is in the best interests of the children, Marvin Jr. and David, to terminate the parental rights of Leatrice G. and Marvin M., Sr.
It is accordingly, ORDERED that the parental rights of Leatrice G. and Marvin M., Sr., are hereby terminated. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. A permanency plan shall be submitted within 90 days. A review Plan for Terminated Child shall be filed in accordance with Federal Law.
Foley, J