MEMORANDUM OF DECISION
On April 23, 1998, the Department of Children and Families, hereafter "DCF", filed a petition to terminate the parental rights of Wilma P. and Martin D. to their daughter, Melissa, D., born February 10, 1997. Melissa has never been in the care of either of her biological parents. She was placed in foster care when she was a few days old, as she tested positive for cocaine and heroin at birth. Her mother admitted she had used drugs during her pregnancy and that she had neither a plan for the CT Page 12911 child's care nor any supplies for her at home. Melissa was subsequently adjudicated a neglected and uncared-for child on May 17, 1997.
DCF alleges that the child has been abandoned by the parents in the sense that the parents have failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. Also, DCF alleges the child was previously adjudicated neglected and that each parent has failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. The next allegation is that there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. Also alleged was that the parents' rights to a previous child had been terminated and that they had each failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the child, they could assume a responsible position in the life of the child. Connecticut General Statutes § 17a-112 (c)(3)(A), (B), (C), and (E). During the pendency of the action, Martin D. died on August 4, 1998 of cardiovascular collapse, and the case proceeded against the mother, Wilma P. On the day of the trial, October 30, 1998, DCF withdrew the allegations of no going parent-child relationship. The court also took judicial notice of the decision in a previous case, In reMarcus D., (Child Protection Session Docket No. H12-CP95-000154A, Foley, J.) terminating the mother's rights to a previous child. Wilma P. did not attend the trial. From the testimony of the DFC social worker, Elsie Vasquez, the court concludes that Wilma had actual notice of the trial date. She contacted the worker on the morning of the trial to say that she was unable to attend. Her counsel attended the trial. The court heard testimony from the social worker and received seven exhibits. From the evidence, the court makes the following findings:
 1. FACTS
Melissa's biological mother, Wilma P., is now thirty-six years old and has given birth to three children. The oldest CT Page 12912 child, Delia, was born when Wilma was seventeen. Wilma at that time had not completed high school, but only received education through the ninth grade. Through the years, she has been employed sporadically and was unemployed at the time of trial. Her second child, Marcus was born fifteen years later, on December 12, 1994.
DCF has been involved with Wilma since 1991 when concerns were raised about her oldest child, Delia. Then, on February 3, 1995, when Marcus was only two months old, he was brought to the hospital with first and second degree burns on his right foot and lower leg, determined by the attending physician to be consistent with immersing the leg in very hot water. Marcus was removed from Wilma's care and placed in foster care. As previously stated, her rights to this child were terminated on November 10, 1997.
When Melissa was born drug-exposed, her mother also tested positive for cocaine and heroin use. Wilma confessed that she had used illegal drugs during her pregnancy with Melissa and that she had not sought any prenatal care. Wilma reported that she had sought treatment at various substance abuse treatment facilities in the past, including inpatient treatment at Blue Hills Hospital, Mt. Sinai Hospital and at the Hispanic Health Council as well as the Salvation Army. During the pendency of the neglect petition concerning Melissa, she admitted herself to the Alcohol and Drug Rehabilitation Center for detoxification for a period of three days in October, 1997. Wilma was also referred by DCF to the Henderson and Johnson Methadone Treatment Program. Despite her acceptance of the court ordered expectations, which required her to sign releases for her treatment providers so that DCF could confirm her attendance, monitor her progress and initiate any further referrals indicated by such providers, she never signed such releases. Consequently, DCF never secured information about Wilma's treatment progress, if any, and was not able to make further referrals.
Wilma also did not comply with the other expectations set for her. Among those expectations were the requirements to participate in parenting education and drug and alcohol testing. Wilma never attended any parenting classes and did not stop her substance abuse. She was unable to maintain her sobriety. She did not maintain adequate independent housing or income. Her official address is with her mother, but she also resides with friends elsewhere for weeks at a time. She is not employed and receives City welfare assistance. She also did not visit with Melissa as often as DCF permitted and those visits she did have with the CT Page 12913 child demonstrated no ability or desire on her part to bond with Melissa.
Ms. Vasquez, the DCF treatment worker, testified that Wilma originally had weekly scheduled visits with Melissa and from the time the child was placed into foster care until the filing of the termination petition, she had a total of thirty-eight visits. When Wilma came to the visits, the DCF worker states, she most often appeared depressed with a flat affect. She would sit with Melissa in her lap, holding the child facing away from her. There was little or no eye contact and very little interaction. Wilma also did not attempt to engage the child in play as she got older and was able to play. Her last visit was on July 29, 1998. She also did not call the DCF worker to inquire about the child, send cards, letter or gifts for important holidays. As Ms. Vasquez testified, Wilma P. did not make Melissa a priority in her life.
Melissa was in one foster home until May 1, 1998, when she was moved to her present home. She is, however, not in a pre-adoptive home. DCF's permanent plan had been to place her together with her brother Marcus and her previous foster family was not able to take both children. The present family is the family with whom Marcus has been living and they also are not able to adopt both children. Ms. Vasquez testified that DCF plans to place both children with foster parents, who are friends of the present foster family and active in the same church. The current foster parents will continue to have contact with both children as "godparents". She further testified that Melissa, at the present time, is a healthy, happy child, who is meeting her developmental milestones. She interacts well with her brother and the various significant adults in her world. Both children have had visits, including overnight visits, with the pre-adoptive new foster family and the transition is proceeding very smoothly. Ms. Vasquez indicated that the permanent transition to the new pre-adoptive home is expected to take place in the near future and all of the signs are good for both children to bond with the new family.
 2. ADJUDICATION
With respect to the statutory grounds for termination of parental rights, the court finds, by clear and convincing evidence, as of April 23, 1998, that Melissa had been abandoned by her mother. "Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does CT Page 12914 not personally interact with the child, and demonstrates no concern for the child's welfare." In re Juvenile Appeal(Docket No. 9489), 183 Conn. 11, 14, 438 A.2d 801 (1981). While Wilma expressed some interest in Melissa, that interest has been sporadic and not sustained. As has been stated: "Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of `interest, concern or responsibility' for the welfare of a child." In reLuke G., 40 Conn. Sup. 316, 323, 498 A.2d 1054 (1985); In reMigdalia M., 6 Conn. App. 194, 208-209, 504 A.2d 532 (1986) These are all facts which Wilma failed to take.
Baced on clear and convincing evidence, the court concludes further that Wilma P. has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of her child, she could assume a responsible position in Melissa's life. Connecticut General Statutes § 17a-112 (c)(3)(B). She has not begun the process of drug and alcohol rehabilitation, has not completed any parenting education, let alone be rehabilitated as a parent. Melissa was placed in foster care on February 13, 1997, a few days after her birth. Since that time, her mother has not demonstrated any measurable progress toward rehabilitation or any compliance with court-ordered expectations. More than one year has already passed since Melissa's placement. Melissa simply cannot wait any longer for the rehabilitation of her biological mother as she has immediate and strong needs for permanency.
"`Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M. 6 Conn. App. 194,203, 504 A.2d 532 (1986). See also: In re Juvenile Appeal,1 Conn. App. 463, 477, 473 A.2d 795, cert. denied, 193 Conn. 802,474 A.2d 1259 (1984). There is no doubt that Wilma P. has not begun the process to accomplish such an outcome. Rehabilitation within the foreseeable future is not likely.
Based on these findings, the court also finds from the clear and convincing evidence that the third ground alleged has been proven in that Wilma P.'s rights to another child were terminated and she has failed to rehabilitate within the meaning of the statute. Connecticut General Statutes § 17a-112 (c)(3)(E).
 3. REQUIRED FINDINGS
CT Page 12915
The court makes the following factual findings based upon the clear and convincing evidence required by Connecticut General Statutes § 17a-112 (e):
1) Appropriate and timely services were provided by DCF, including casework services, visitation, drug and alcohol treatment referrals, referrals to counseling and parenting education.
2) The court finds by clear and convincing evidence that DCF made reasonable efforts to reunify the family, given the situation and circumstances, as far as possible. Wilma did not participate in services and she did not engage during the visitation sessions she was offered. Given her response, the DCF efforts were reasonable.
3) DCF set reasonable and realistic goals as evidenced by the court-ordered expectations for Wilma P. in order to reunify the family. Wilma was not able to remain drug or alcohol free for any period of time. She did not participate in the services she needed to rehabilitate and made no efforts toward that goal.
4) The feelings and emotional ties of the child with respect to the parents, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. Melissa does not know her mother as a parent. She has never been in her care. For a period of one year until May 1, 1998, Melissa was in the care of a foster family who provided for her needs and she has developed well.
5) Finding regarding the age of the child. Melissa is one year and nine months old.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the child to return the child to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the child as part of an effort to reunite the child with the parents, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. Wilma maintained contact with Melissa through visitation, which was sporadic. There were months where she did not visit and times when she CT Page 12916 missed visits. She sent no cards, gifts and made no inquiries about the child, independent of her supervised visits. Wilma has been unable, as previously found, to adjust her conduct to make a return of Melissa to her feasible.
7) Finding regarding the prevention of the parents from having a meaningful relationship. No inappropriate conduct is noted. DCF has taken many steps to encourage Wilma to have a meaningful relationship with Melissa and to rehabilitate.
Also required for adjudication is a finding by the court that either the facts warranting the adjudication have existed for more than one year prior to the filing of the petition or that under the totality of the circumstances, it is in the best interests of the child that the time period be waived. Connecticut General Statutes 17a-112 (d)(1). Waiver of the one year requirement is within the court's sound discretion. In ReRomance M., 30 Conn. App. 839, 622 A.2d 1047, appeal dismissed,229 Conn. 345, 641 A.2d 378 (1993). In Re Christine F,6 Conn. App. 360 (1986). The waiver is appropriate in this case where the biological mother refuses all services and has by her conduct terminated all contact with her daughter. Waiting for the time required by the general provisions of the statute to pass would serve no purpose and is not in the best interests of Melissa, who deserves permanency in her life. The court notes that there is no requirement for the passage of one year with respect to Connecticut General Statutes § 17a-112 (c)(3)(E). The court concludes that it is in Melissa's best interests that the one year time requirement be waived and it is so ordered.
 4. DISPOSITION
Melissa has been in foster care for over one year. Her biological mother has demonstrated no rehabilitation as a parent nor has she remained drug-free. Melissa requires permanency to succeed in her life, to continue to grow and be nurtured by loving, consistent and stable caretakers. The court concludes, from all the evidence, that it is in her best interests that a termination of parental rights enter with respect to her mother, Wilma P. and, accordingly, a termination of her parental rights is ordered. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. If the prospective pre-adoptive parents continue to be willing to adopt Melissa, it is the court's direction that they receive first consideration. A permanency plan for Melissa shall be submitted CT Page 12917 within ninety days. A review plan for her shall be filed in accordance with state and federal law.
Barbara M. Quinn, Judge Child Protection Session